IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>ROBERT DION WEBSTER,<br><br>                Defendant. | 8:12-CR-426<br><br>MEMORANDUM AND ORDER ON MOTION TO VACATE UNDER 28 U.S.C § 2255 |

## I. INTRODUCTION

Defendant Robert Dion Webster has filed a *pro se* Motion to Vacate Under 28 U.S.C. § 2255. Filing 103. This matter is before the Court to conduct an initial review of Webster's Motion pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 2255(b). For the reasons stated herein, the Court finds that it "plainly appears" that Webster is not entitled to relief and denies his Motion. The Court will not issue a certificate of appealability.

## II. BACKGROUND

In 2007, AC[1] and her mother lived in Walthill, Nebraska, with Webster. Filing 56 at 15–16. That year, AC, who was around seven or eight years old, was watching television when Webster laid next to her and sexually assaulted her. Filing 56 at 18–22. Five years later, AC began telling friends at school about what had occurred. Filing 56 at 24–25. According to AC, she did not report Webster's assault earlier because she feared reprisal from him. Filing 56 at 23–24. One of AC's friends encouraged her to talk to her school's guidance counselor. Filing 56 at 29–30. After hearing AC's story, the guidance counselor called the police. Filing 56 at 30. During the

---

[1] The Court uses an acronym for the victim in this case for privacy purposes.

1

investigation, AC told multiple people that Webster had raped her. *See, e.g.,* Filing 56 at 60–61; Filing 57 at 109–11.

After the investigation into AC's accusations, a grand jury charged Webster with knowingly engaging in a sexual act with a child under 12 years old, in violation of 18 U.S.C. § 2241(c). Filing 1. The Indictment also alleged that Webster had previously been convicted in 2002 of attempted sexual abuse, thereby subjecting him to enhanced penalties under 18 U.S.C. § 2247. Filing 1. The trial began on May 21, 2013, and the jury returned a guilty verdict. Filing 32 (Text Minute Entry); Filing 40.

After the verdict, on August 28, 2013, Webster filed a Motion for New Trial, which asserted that AC had recanted her accusations against Webster during a therapy session earlier that month. Filing 50. The Court[2] held a hearing on this Motion, during which Webster informed the Court that he wanted to withdraw the Motion. Filing 87. The Court directly questioned Webster if he was voluntarily and knowingly making this decision, and Webster said yes. Filing 87 at 4.

The Court held a sentencing hearing on March 3, 2014. Filing 76 (Text Minute Entry). AC, who was present without counsel or her appointed *guardian ad litem*, asked to testify at the hearing, which the Court denied and instead permitted her to submit a written statement. Filing 79 at 5; Filing 90. The Court received the statement as a sealed exhibit, but did not disclose it to either party. Filing 77; Filing 79 at 5; Filing 90. The Court sentenced Webster to 30 years imprisonment, which was the mandatory minimum for his offense. Filing 78. After sentencing, Webster filed a Motion to Produce AC's written statement, which the Court denied because Webster had already filed his appeal. Filing 90; Filing 95. The Eighth Circuit Court of Appeals affirmed Webster's conviction and sentence and issued its Mandate on October 26, 2015. Filing 98; Filing 101.

---

[2] Senior Judge Lyle E. Strom presided over Webster's trial and sentenced him. After Judge Strom retired, the case was reassigned to the undersigned judge. Filing 107.

Nearly eight years later, on July 17, 2023, Webster filed a Motion to Vacate under 28 U.S.C. § 2255. Filing 103. In his Motion, Webster claims that his counsel rendered ineffective assistance of counsel by failing to object to the Court's decision not to provide him with AC's written statement at sentencing and to not allow AC to testify at sentencing. Filing 103 at 4. In his accompanying brief, Webster also takes issue with his counsel's cross-examination of AC at trial, his counsel's failure to "argue vigorously" for records from a tribal court regarding an investigation into AC's allegations, and his counsel's decision to appeal issues that "were clearly weaker" than issues related to obtaining AC's written statement. Filing 103 at 13–15. Webster also asserts that he is actually innocent of his offense. Filing 103 at 22–26.

### III. ANALYSIS

#### A. Applicable Standards

Webster brings his Motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 143 S. Ct. 1857, 1865 (2023); *see also Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) ("Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011))). Relief under § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

3

The judge receiving a § 2255 motion to vacate must first determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must order the United States to respond and consider holding a hearing. 28 U.S.C. § 2255(b); *see also* Rule 4(b) of the Rules Governing Section 2255 Proceedings. A court cannot accept a petitioner's allegations as true if "they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016).

### B. Statute of Limitations

The obvious issue with Webster's Motion, which Webster himself recognizes, is that he filed it many years after the Eighth Circuit issued its Mandate in his direct appeal. The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes "a one-year statute of limitations on motions by prisoners under section 2255 seeking to modify, vacate, or correct their federal sentences." *Odie*, 42 F.4th at 944–45 (quoting *Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013)); *accord.* 28 U.S.C. § 2255(f). The statute of limitations begins to run from the latest of (1) when the judgment becomes final, (2) when "the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed," (3) "the date on which the right asserted was initially recognized by the Supreme Court" if that right has retroactive application, or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)–(4).

Webster concedes that the deadline for him to file a habeas petition "long passed." Filing 103 at 19. His grounds for habeas relief all involve the alleged ineffective assistance of counsel of which he was aware prior to judgment becoming final.[3] The statute of limitations began running after the time for Webster to file a petition for a writ of certiorari on his direct appeal expired, which was 90 days after the Eighth Circuit issued its Mandate, *i.e.,* January 25, 2016.[4] *See Kemp v. United States*, 142 S. Ct. 1856, 1860 (2022) (explaining that when a habeas petitioner does not seek review in the Supreme Court in his or her direct appeal "a judgment becomes final when the time to seek certiorari expires—ordinarily, 90 days after judgment"); Supr. Ct. R. 13. Thus, the statute of limitations period passed on January 25, 2017. *See* 28 U.S.C. § 2255(f). Therefore, Webster's habeas petition is untimely under § 2255(f).

1. *Equitable Tolling*

Webster argues that he "jumps the hurdle of procedural bar" because his attorney was allegedly ineffective at trial and on appeal. Filing 103 at 19. According to Webster, because his counsel could not assert his own ineffectiveness on appeal and failed to obtain AC's written statement at sentencing, Webster should be permitted, in the "interest of justice," to have his habeas petition considered on the merits. Filing 103 at 20. The Court construes this argument as contending that the statute of limitations should be equitably tolled.

In very limited circumstances, a court may equitably toll the one-year statute of limitations under § 2255(f) if the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Muhammad,* 735 F.3d at 815 (internal quotation marks omitted) (quoting *Holland v. Florida,* 560 U.S. 631, 648

---

[3] Section 2255(f)(4) does not apply because Webster knew about AC's alleged recantation to her therapist in 2013.
[4] 90 days after the Eighth Circuit issued its mandate is January 24, 2016, but because that date falls on a Sunday, the deadline to file a petition for certiorari would have been January 25. *See* Supr. Ct. R. 30.

(2010)). As defined by the Eighth Circuit, "extraordinary circumstances" are those which are "beyond a prisoner's control [and which] prevent timely filing." *United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005). A petitioner's attorney's serious misconduct can constitute "extraordinary circumstances." *Muhammad*, 735 F.3d at 816.

Here, Webster's counsel's alleged deficiencies fail to meet this high standard. Simply because Webster's counsel could not raise his own ineffectiveness on appeal does not excuse Webster's failure to do so within the time limitations proscribed by § 2255(f). Furthermore, Webster's counsel's unsuccessful attempt to obtain AC's written statement at sentencing does not justify equitable tolling, as nothing prevented Webster from raising that issue in a timely habeas petition. Webster's situation does not reach the high standard permitting a court to equitably toll the one-year statute of limitations. *See id.* at 816 (noting in prior cases equitable tolling was authorized when counsel failed to file a habeas petition despite his client's repeated attempts to get him to do so or when the petitioner's counsel repeatedly lied about the filing deadline and the status of his case). Alternatively, the Court notes that Webster fails to explain his lack of diligence. *See Odie*, 42 F.4th at 946 (explaining that diligence "can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence"). There is no indication in the record that Webster has been pursuing habeas relief beyond his late-filed Motion. The fact that Webster did not file his Motion until over seven years had passed from judgment becoming final demonstrates his lack of diligence. *Compare Muhammad*, 735 F.3d at 816–17 ("This court has found a section 2255 movant demonstrated diligence when he hired counsel well ahead of the deadline, 'did everything in [his] power to stay abreast of the status of his case,' provided original documents to his attorney to assist with the motion, filed a complaint with the state bar, and filed

6

motions with the district court seeking an extension of time and the return of documents submitted to the attorney." (quoting *Martin*, 408 F.3d at 1095)). Therefore, the Court declines to equitably toll the statute of limitations.

   2. *Actual Innocence*

Although Webster does not appear to raise actual innocence as a way to overcome § 2255(f)'s one-year statute of limitations, he does seem to assert his innocence as a standalone ground for relief in his Motion. Filing 103 at 23–29. Because a successful assertion of actual innocence allows a petitioner to raise grounds for habeas relief that are otherwise time-barred, the Court addresses whether Webster can show actual innocence. *See Rouse v. United States*, 14 F.4th 795, 801 (8th Cir. 2021) ("Rouse III") ("[A]n adequate showing of actual innocence will serve as a gateway that allows a defendant to bring an ineffective assistance of counsel claim otherwise barred by AEDPA's one-year statute of limitations" (internal footnote and quotation marks omitted)). Webster makes two allegations in support of his actual innocence claim. First, Webster claims that AC allegedly recanted her accusations against him in a post-trial therapy session. Filing 103 at 23–27; *see also* Filing 50-1 (alleged letter from therapist). Second, Webster alleges that the attorney who prosecuted his case admitted in a job interview that she "wrongfully" prosecuted Webster.[5] Filing 103 at 28.

"To obtain review of an otherwise procedurally barred claim, a petitioner must satisfy a two-part test: (1) the 'allegations of constitutional error must be supported with new reliable evidence not available at trial'; and (2) 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Nash v. Russell*, 807 F.3d 892, 899 (8th Cir. 2015) (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001))). Courts have described

---

[5] Webster states that the interviewers, who are allegedly members of the Winnebago Tribal Counsel, kept "minutes" of the interview and are willing to testify about it. Filing 103 at 28.

7

this test as "strict," "demanding," and "extraordinarily high." See *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013); *Feather v. United States*, 18 F.4th 982, 987 (8th Cir. 2021); *Wadlington v. United States*, 428 F.3d 779, 783 (8th Cir. 2005). Typically, a petitioner claiming actual innocence must present "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that was not offered at trial. *Kidd v. Norman*, 651 F.3d 947, 951–52 (8th Cir. 2011) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). An assertion of actual innocence falters when "there is sufficient evidence to support a conviction." *Wadlington*, 428 F.3d at 783.

Webster relies heavily on AC's alleged post-trial recantation of her sexual assault allegations against Webster. As an initial matter, this alleged recantation is not before the Court. Instead, the only indication that the Court has that this recantation exists comes from Webster's Motion for New Trial, in which his counsel represented that AC's therapist contacted him about two months after trial saying that AC recanted her allegations against Webster and stated that "she did not think it would get this far—to the point of conviction and sentencing." Filing 50 at 2. The alleged therapist later wrote a purported letter to Webster's counsel relaying the following:

> As per our conversation [on] August 27, 2013, I am following up with this letter. My name is Terry Chase LMHC LMHP; I am a Psychotherapist with Prairie Psychological Services, Inc[.], South Sioux City, Nebraska. I have a release of information from [AC's mother] regarding her daughter [AC] who is my [p]atient. [AC] continues to maintain that "[n]othing happened with [Webster]" ([y]our client). I have inquired several times and it is my opinion that [AC] is making this statement voluntarily and continued to report the same at our last session [on] 8/19/2023."

Filing 50-1. Thus, what is actually before the Court is not AC's recantation, but a letter from AC's purported therapist concerning AC's alleged recantation which Webster has known about for over nine years.[6]

---

[6] Webster also relies on the written statement AC provided Judge Strom at sentencing. But the Court does not have a copy of that statement. Thus, there is no evidence that this written statement contained AC's recantation, and it cannot

This fact presents an obstacle for Webster because the Eighth Circuit requires § 2255 motions alleging the discovery of new evidence to comply with Federal Rule of Criminal Procedure 33, which governs post-trial motions for a new trial based on newly discovered evidence. *See Feather*, 18 F.4th at 987 (8th Cir. 2021) ("When newly discovered evidence is the ground for a § 2255 motion, the district court should apply the same substantive test which governs a motion for new trial under Fed. R. Crim. P. 33 premised on the same ground." (quoting *Rouse*, 14 F.4th at 800). To obtain a new trial based on newly discovered evidence under Rule 33, the Eighth Circuit requires the following:

> (1) the evidence is in fact newly discovered since trial; (2) diligence on [the movant's] part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) it is probable that the new evidence would produce an acquittal at the new trial.

*United States v. Bell*, 761 F.3d 900, 911 (8th Cir. 2014) (quoting *United States v. Myers*, 503 F.3d 676, 682–83 (8th Cir. 2007)).

While Webster's counsel may have acted diligently when presenting evidence of AC's recantation in a motion upon discovering it shortly after trial, Webster reasserting this evidence nine years after learning about it does not show that he has acted diligently. *See Feather*, 18 F.4th at 987 (holding that affidavits of witnesses recanting their testimony did not abide by Rule 33 when they were "signed more than twenty years after trial); *Rouse*, 14 F.4th at 801 (holding that presenting a third round of victim recantations and new defense experts nearly twenty-five years after trial did not comply with Rule 33). Furthermore, Webster's only evidence is a letter from AC's therapist claiming that AC recanted during a therapy session. The Eighth Circuit has held that testimony from another individual that a witness has recanted is impeaching evidence, which

---

be used to support Webster's assertion that he is actually innocent. Furthermore, Webster has known that the statement exists since the sentencing hearing in 2014, yet has waited until now to reference it in support of habeas relief.

cannot support a motion for a new trial. *See United States v. Johnson*, 450 F.3d 366, 373 (8th Cir. 2006). Finally, the fact that Webster has not produced any statement—such as an affidavit—directly from AC herself in support his Motion is another reason to deny it. *See United States v. Ward*, 544 F.2d 975, 976 n.2 (8th Cir. 1976) ("[T]here is some authority for the proposition that a failure to produce or explain the absence of an affidavit of a recanting witness will result in the denial of a motion for new trial."); *see also United States v. Rojas*, 520 F.3d 876, 885 n.1 (8th Cir. 2008) (noting that a "motion for a new trial should be supported by evidence in the form of an affidavit" but excusing the lack of an affidavit because "events unfolded rapidly and in an unusual manner" after trial).

But even if Webster's Motion could survive Rule 33's application, his evidence fails to pass the demanding test for actual innocence. The Court will assume that Webster would be able to admit into evidence AC's alleged statement to her therapist that "nothing happened with Webster." *See United States v. Running Horse*, 175 F.3d 635, 638 (8th Cir. 1999) (holding that a clinical psychologist could testify about statements made to him by a child victim of sexual abuse under Federal Rule of Evidence 803(4)). Courts cast a skeptical eye on recantations, particularly in cases involving the sexual assault of a minor. *See Feather*, 18 F.4th at 987 (8th Cir. 2021) ("[W]e agree with the district court that motions for new trial based on recantations are viewed with disfavor . . . ."); *Wadlington*, 428 F.3d at 784 ("[W]e agree with the district court that recantations of testimony generally are viewed with suspicion."). As the Eighth Circuit has explained, viewing recantations with skepticism "is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon, particularly 'when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story.'"

*United States v. Rouse*, 410 F.3d 1005, 1009 (8th Cir. 2005) ("Rouse II") (quoting *United States v. Provost*, 969 F.2d 617, 621 (8th Cir. 1992)).

In Webster's case, there is evidence that AC's mother would have played a role in any alleged recantation by AC. AC's mother testified as a defense witness, appeared to fake breaking up with Webster to bolster her credibility at trial, and admitted to discussing AC's testimony with AC before trial and encouraging her "not to embellish."[7] Filing 56 at 87–90; Filing 58 at 63–64, 66–68. Thus, the reliability of the alleged recantation is in serious doubt. *See Nash*, 807 F.3d at 899 (stating that actual innocence must be supported with "reliable evidence").

In light of the skepticism that ordinarily greets recantations in child sexual assault cases, and that the reliability of AC's recantation is highly questionable, the Court concludes that AC's therapist testifying that AC recanted does not demonstrate that "it is more likely than not that no reasonable juror would have convicted" Webster had Webster offered this testimony at trial. *Id.* The evidence at trial was sufficient to convict Webster, even if this testimony had been introduced. *See Wadlington*, 428 F.3d at 783 (stating that when "there is sufficient evidence to support a conviction," a movant cannot show actual innocence). At trial, AC testified that Webster raped her and told several individuals—including friends, a school counselor, a social worker, and investigators—about what had occurred. Filing 56 at 17–23, 49–51, 59–62; Filing 57 at 88–90, 107–13, 133, 152–52, 162. The Government also introduced evidence of Webster's prior sexual assaults under Federal Rule of Evidence 413, including Webster's sister-in-law testifying that she woke up while Webster was pulling down her pants. Filing 57 at 52–53, 70–71. Finally, the Supreme Court has stated that a lack of diligence is "part of the assessment whether actual innocence has been convincingly shown," *McQuiggin*, 569 U.S. at 399, and Webster has certainly

---

[7] AC's mother also had two children with Webster. Filing 56 at 88.

11

been dilatory. In light of the evidence introduced at trial, the unreliability of AC's supposed recantation, and Wesbter's inexplicable delay, the evidence Webster offers to support his innocence is insufficient to convincingly show that, more likely than not, no reasonable juror would convict him. *Cf. Feather*, 18 F.4th at 987 (holding that recantation affidavits from four of five of the victims along with "credible" criticism of the Government's medical evidence was insufficient to make out a freestanding actual innocence claim).

Finally, the prosecutor in Webster's case supposedly admitting in a job interview that Webster was wrongfully prosecuted does not help his cause. For one, Webster offers no evidence that the prosecutor made these admissions. Second, even assuming that the prosecutor now believes that Webster was wrongly prosecuted, her subjective impressions of Webster's case are not the type of evidence that may be used to support an assertion of actual innocence. *See Kidd*, 651 F.3d at 951–52 (explaining the types of evidence that are commonly used to support actual innocence). Whether the prosecutor believes that Webster was wrongly prosecuted or not has no bearing in an evidentiary sense on his innocence or guilt. Furthermore, the prosecutor's statements in a job interview would not be admissible at trial, so they cannot be used to support Webster's assertion of actual innocence. *See United States v. Delgrosso*, 852 F.3d 821, 826 (8th Cir. 2017) (stating that an affidavit offered to support a claim of actual innocence was likely inadmissible).

The evidence Webster offers in support of his innocence is insufficient under the law. Because the record easily rebuts his claim, no hearing his required. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (explaining that a hearing is not required on a habeas petition when "the claim is inadequate on its face or . . . the record affirmatively refutes the factual assertions upon which it is based" (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir.

2007)). It "plainly appears" that the statute of limitations under 28 U.S.C. § 2255(f) applies and bars Webster's petition. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings.

### C. No Notice Required

The Court next addresses whether it should give Webster notice before denying his Motion as time-barred. The Supreme Court has held that "district courts are permitted . . . to consider, *sua sponte*, the timeliness of a . . . habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). Before doing so, however, "a court must accord the parties fair notice and an opportunity to present their positions." *Id.* at 210. Nevertheless, the Court does not need to give notice and opportunity in this case because Webster acknowledged in his Motion that his habeas petition was untimely and provided several arguments to circumvent the statute of limitations in § 2255(f). *See Melander v. Wyoming*, 661 F. App'x 521, 525 (10th Cir. 2016) ("[The petitioner] did not need additional notice as he was aware at the time he filed his petition that he would have to overcome the statute of limitations."). Webster was clearly on notice that his petition was untimely, and took advantage of his opportunity to argue that the statute of limitations should not bar his petition. Therefore, the Court may raise the timeliness issue *sua sponte* and dismiss it now without further proceedings.

### D. Certificate of Appealability

The Court last addresses whether it should issue a certificate of appealability. No appeal may be taken on a § 2255 motion to vacate unless a judge issues a certificate of appealability, which requires the appellant to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)–(2). To make "a substantial showing of the denial of a constitutional right" after the district court denies a constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is

denied on procedural grounds, a petitioner is entitled to a certificate of appealability if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Reasonable jurists would not find the Court's decisions debatable. Webster's Motion is untimely, and he did not provide sufficient grounds to equitably toll the statute of limitations. Webster's assertion of actual innocence failed for multiple reasons under well-established rules in Eighth Circuit and Supreme Court caselaw. Therefore, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For these reasons, the Court denies Webster's Motion to Vacate Under 28 U.S.C. § 2255 as time-barred. Accordingly,

IT IS ORDERED:

1. Robert Dion Webster's Motion to Vacate Under 28 U.S.C. § 2255, Filing 103, is denied;

2. Webster's Motion for Appointment of Counsel, Filing 104, is denied as moot; and

3. The Court will not issue a certificate of appealability.

Dated this 2nd day of August, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge